IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| YOUNUS ALAAMERI,<br><br>    Plaintiff,<br><br>    v.<br><br>SECRETARY, DEPT. OF PUBLIC SAFETY<br>  AND CORRECTIONAL SERVICES,<br>DEP. DIRECTOR ROBIN WOOLFORD,<br>K. REDDITT,<br>ROBERT DEAN,<br>SEVEN UNNAMED OFFICERS,<br>OFFICER NUTIOSE,<br>OFFICER MOSHA,<br>OFFICER OLUFSI,<br>OFFICER LAWS,<br>LT. WALLEBE,<br>OFFICER S. WALLACE,<br>OFFICER A. EASN,<br>OFFICER M. BARRY,<br><br>    Defendants. | Civil Action No.:  SAG-23-2832 |

**MEMORANDUM OPINION**

Pending in this case is a Motion to Dismiss or, in the alternative, for Summary Judgment filed on behalf of all Defendants. ECF 24. The motion is opposed by self-represented Plaintiff Younus Alaameri. ECF 26. Defendants filed a Reply (ECF 27) and Alaameri filed an unauthorized Surreply (ECF 28). There is no need for a hearing. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Defendants' motion, construed as one seeking summary judgment, shall be granted.

I.   **BACKGROUND**

Alaameri claims that his constitutional rights, including his First Amendment right to freely practice his religion and his Eighth Amendment right to remain free from cruel and unusual

punishment, have been denied by Defendants. He states that he is Jewish and requires a kosher diet, but he has been denied kosher meals, resulting in his suffering hunger for eight months. He also asserts that he was interrogated regarding his faith and had to prove he was Jewish to be placed on a kosher diet.

Alaameri alleges that certain Defendants, Deputy Director of the Inmate Grievance Office ("IGO") Robin Woolford, Commissioner of Correction K. Redditt, and Warden Robert Dean, violated his constitutional rights by refusing to process his administrative remedy procedure complaints ("ARPs"), appeals, and IGO complaints. ECF 11 at 7, 12, and 17. He also claims that Warden Dean encouraged supervisory officers to deny his kosher meals through dismissal of his ARPs. *Id*. at 17.

On March 14, 2023, two unnamed officers refused to provide Alaameri with a kosher meal in the morning, ignored his pleas to do so, and, instead, gave his kosher meal away to another inmate, Antonio Gant. ECF 11 at 22. Alaameri claims he "starved" as a result. *Id*. That same day, two unnamed officers failed to give Alaameri a kosher meal at lunchtime. *Id*. at 24. The officers claimed they did not have kosher meals and ignored Alaameri thereafter. *Id*.

On April 21, 2023, at 4:30 p.m., Defendant Officer Nutiose was distributing meals and told Alaameri he would bring him a kosher meal because he knew Alaameri is Jewish. ECF 11 at 26. However, Nutiose gave Alaameri's cellmate a food tray and left, never having provided Alaameri with a kosher meal. *Id*. He claims he attempted to call Nutiose "about 6 times" but Nutiose never acknowledged the call and never provided Alaameri with his food. *Id*.

On April 23, 2023, between 4:00 p.m. and 6:00 p.m., Alaameri told Defendant Officer Mosha that he was supposed to get a kosher meal. ECF 11 at 28. Mosha acknowledged this and gave Alaameri one non-kosher food tray for his cellmate. *Id*. Alaameri had not received his kosher

meal at 9:45 p.m. that evening and asked Defendant Officer Olufsi about his dinner but Olufsi said he did not know anything about it. *Id*. Olufsi asked Mosha about it and Mosha said not to worry about it. *Id*. Alaameri said he would file a complaint and Mosha stated that he did not care. *Id*. Alaameri never received a kosher dinner that day. *Id*.

On May 4, 2023, at approximately 11:30 a.m., Alaameri claims an unnamed officer put two regular meal trays into the slot for his cell. ECF 11 at 30. Alaameri told the officer that he was supposed to get a kosher meal. *Id*. Although the officer assured Alaameri he would be back with his kosher meal, Alaameri never saw the officer again. *Id*.

On May 10, 2023, between 4:00 a.m. and 6:00 a.m., an unnamed officer failed to give Alaameri his kosher meal. ECF 11 at 32. Alaameri states that he immediately broke down and tried to commit suicide by cutting his wrist. *Id*. He did this in front of an unnamed sergeant who left Alaameri in his cell bleeding for two hours. *Id*.

On May 16, 2023, between 10:00 a.m. and 11:41 a.m., an unnamed officer did not provide Alaameri with his kosher diet and "left [him] facing hunger." ECF 11 at 34.

On June 5, 2023, two unnamed officers did not give Alaameri his evening meal and left him "starving for that night." ECF 11 at 36. Alaameri adds that he had to take an antibiotic for his surgery on an empty stomach. *Id*. The nature of the surgery is not described.

On June 12, 2023, Alaameri claims that Defendant Officer Laws refused to provide him with a kosher meal at dinner time. ECF 11 at 38. Alaameri states that he continued to beg for his food and Laws simply ignored him and never gave him any food. *Id*.

On June 27, 2023, Alaameri claims that four unnamed officers and Defendant Lt. Wallebe [1] did not provide him with kosher meals for breakfast or lunch. ECF 11 at 40. In spite of the fact

---

[1] Lt. Wallebe is incorrectly named in the Amended Complaint as Lt. Wullebe. The Clerk will be directed to revise the spelling.

that Alaameri told Wallebe directly about the failure to give him meals and Wallebe promised that he would look into it, Alaameri claims that he never received breakfast or lunch that day and he "starved." *Id*.

On July 27, 2023, Alaameri claims that an unnamed officer refused to give him a kosher breakfast and ignored him when he asked about his food. ECF 11 at 42.

On August 17, 2023, around 11:30 a.m., Defendant Officer S. Wallace placed two regular meal trays in the slot of Alaameri's cell door. ECF 11 at 44. Alaameri told Wallace that he was supposed to get a kosher meal. *Id*. Wallace asked Alaameri if he wanted the meal tray that was there and Alaameri responded that he needed his religious diet. *Id*. Wallace took the regular meal tray out of the slot, closed the slot, and walked away. *Id*. At 1:30 p.m. that same day, Alaameri recalls that Defendants Officer Barry[2] and Officer A. Esan took him to the shower, and he noticed that his kosher meal was on the officer's desk. *Id*. Alaameri asked Esan if he could have his food and Esan responded that he would give it to Alaameri after his shower. *Id*. When Alaameri was done with his shower, however, the kosher meal was gone, and Esan simply stated that it had been stolen. *Id*.

Defendants explain that the Department of Public Safety and Correctional Services ("DPSCS") has a Religious Diet Program ("RDP") to provide reasonable accommodations for religious diets to inmates. ECF 24-2 (Executive Directive OPS.160.0002). Pursuant to the program, inmates who wish to participate in the RDP are required to submit a written request to the administrative chaplain or designee. *Id*. at 5, ¶ D. The administrative chaplain, in this case, Rabbi Panitz, is responsible for reviewing the request, meeting with the inmate who made the request, and denying or approving the request. *Id*. at 5-6, ¶ D(5). If the request is approved, the

---

[2] Officer Barry is incorrectly named in the Amended Complaint as Officer Berry. The Clerk will be directed to revise the spelling.

administrative chaplain goes over an RDP agreement with the inmate and has the inmate sign the agreement. *Id*. at 6, ¶ E(2). A copy of the approved request is given to the correctional food services manager and to Case Management for placement in the inmate's base file. *Id*. Approved food products are to be made available from correctional commissary services. *Id*. at ¶ F.

The RDP agreement, which Alaameri signed on July 18, 2023, explains the sanctions for eating or purchasing food items that are inconsistent with the dietary requirements for the selected RDP. ECF 12-1 at 3. A first offense requires removal from the RDP for 60 days; a second offense requires removal for 90 days, and a third offense results in permanent removal from RDP. *Id*. On October 4, 2023, Alaameri ordered non-kosher items from commissary. *Id*. at 4. When Rabbi Panitz became aware of this, Alaameri's participation in the RDP was suspended for 60 days. *Id*.

If an inmate has not requested participation in the RDP and has not signed an agreement, he or she is not entitled to religious meals. Relevant here, Alaameri's claims that he was denied a kosher meal on March 14, April 21 and 23, May 4, 10, and 16, and June 5, 12, and 27, 2023, occurred prior to Alaameri signing the RDP agreement. His claims that he was denied a kosher meal on July 27, 2023 by an unnamed officer and on August 17, 2023 by Wallace, Esan, and Barry, arose after he signed the RDP agreement.

With respect to the claim against Wallace, Esan, and Barry, each officer filed matters of record in response to Alaameri's ARP filed on August 18, 2023. ECF 24-5 at 3-7. Officer Barry stated that he was on BC-tier to help Officer Esan escort inmates who were in the shower back to their cells. *Id*. at 8. Barry saw a kosher meal sitting on the officer's desk and informed Esan that the kosher meal belonged to Alaameri. *Id*. Barry states that Alaameri received his kosher meal. *Id*. Officer Esan states that he witnessed Barry give Alaameri his kosher meal. *Id*. at 9. In her matter of record, Officer Wallace states that every inmate in B-building, C-wing received their

5

lunch meal and that she could not recall any inmate complaining about not receiving a meal. *Id*. at 10. Based on these statements and Alaameri's failure to provide any evidence to support his contention, his ARP was dismissed. *Id*. at 2.

In his opposition response, Alaameri states that he is unable to oppose Defendants' motion because an officer who is not a party to this lawsuit ordered other inmates to assault him in retaliation for this lawsuit. ECF 26. Specifically, he claims that Lt. Owolabi used another inmate, James Schnur, to assault him in an effort to thwart his litigation of this case.[3] *Id*. at 2. He requests that this Court reconsider his Motion for Protection based on these assertions. *Id*. at 3.

To the extent that Alaameri is attempting to amend his Amended Complaint to add a retaliation claim, he may not do so through opposition to Defendants' dispositive motion. *See Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 692 (D. Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint), *Allegis Group, Inc. v. Bero*, 689 F. Supp. 3d 81, 142 (D. Md. 2023) (same), *see also Equal Rights Ct. v. Niles Bolton Assoc.*, 602 F.3d 597, 603 (4th Cir. 2010) (amendment of complaint may be denied when the amendment is prejudicial to the opposing party because it is belated and changes the nature of the litigation).

Alaameri's Motion for Protection was denied after Defendants produced evidence that the adverse treatment Alaameri complained of was occasioned by his own actions. ECF 15. Alaameri's participation in the RDF was suspended for 60 days when he violated the agreement he signed, and he was placed on disciplinary segregation because he refused to obey a direct order.

---

[3] Alaameri provides a criminal case number for Schnur and intimates that it is an assault case that is connected with his claim of retaliation. *Id*. However, the criminal case against Schnur concerns an assault on a Division of Correction employee, not Alaameri. *See State v. Schnur*, Crim. Case D-07-CR-23-020992 (Anne Arundel Co. Dist. Ct.) at https://mdecportal.courts.state.md.us (last visited Sept. 25, 2024). Alaameri received a subpoena as a witness to the offense.

6

*Id*. At the time of the Court's order, his suspension had expired. In the context of Alaameri's new assertions that he has been targeted for mistreatment, he provides few to no details to support his claim that he has been prevented from litigating his complaint because of the actions taken. In fact, his claim is undermined by the fact that he raises it in a filing made while litigating his complaint.

## II.    STANDARD OF REVIEW

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc*., 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc*., 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). Because Defendants filed this motion styled as a motion to dismiss, or in the alternative, for summary judgment, Alaameri was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. In fact, Alaameri also submitted evidence as an exhibit to his opposition. Accordingly, the Court will review the claims under the Rule 56(a) standard and will consider the exhibits both parties filed.

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med.*

*Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting Fed. R. Civ. P. 56(e)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 249-50.

### III.    DISCUSSION

#### A.    Supervisory Liability

In a suit arising under 42 U.S.C. § 1983, the doctrine of respondeat superior generally does not apply and liability attaches only upon a defendant's personal participation in the constitutional violation.  *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff.  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  For a

supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Here, Alaameri has named Deputy Director of the IGO Robin Woolford, Commissioner of Correction K. Redditt, and Warden Robert Dean because they did not do enough to resolve the ARPs and the subsequent appeals he filed complaining about not receiving kosher meals. ECF 11 at 7, 12, 17. In Alaameri's view, each of these Defendants "could and should have prevented everything that happened" to him, *i.e.*, he "starved" when he did not receive kosher meals. *Id*. Without subjective knowledge, a prison official is not liable. *Farmer v. Brennan,* 511 U.S. 825, 846 (1994); *see Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998). Defendants Woolford, Redditt, and Dean did nothing more than process ARPs in the normal course of their jobs. There are only two instances where Alaameri did not receive a kosher meal after he was approved for the RDP. The instance on July 27, 2023 is described by Alaameri as an unknown officer failing to deliver one kosher meal. He provides no details and adduces no evidence that would enable a meaningful investigation. The August 17, 2023 incident was investigated and found to be without merit after all of the officers allegedly involved reported that Alaameri had in fact received his meal. The denial of Alaameri's ARPs and dismissal of his appeals is insufficient to impute liability to Woolford, Redditt, and Dean for the alleged constitutional violations. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was

not enough to establish personal participation) citing *Whitington v. Ortiz,* 307 Fed, Appx. 179, 193 (10th Cir. 2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations."). Summary judgment is therefore warranted as to the claims against these Defendants.

### B. First Amendment Claim

Alaameri bases his First Amendment claim on the failure to provide him with kosher meals on specific dates and the interrogation he underwent concerning his faith. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). But that retained right is not unfettered. Prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner v. Safely*, 482 U.S. 78, 89-91 (1987). The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this court must examine whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive.

The only restriction at play in Alaameri's case is the requirement that he request a religious diet and have that request approved. Alaameri does not challenge the validity of that requirement and does not address Defendants' assertion that the majority of the instances he claims he was not given a kosher meal occurred prior to his request to participate in the RDP. ECF 26. Each of his

11

claims that he was denied kosher meals that occurred before he was approved for participation in the RDP lacks merit. Defendants are entitled to summary judgment on those claims.

To the extent that Alaameri's claim includes an allegation that he was unfairly interrogated about his religious beliefs, that claim also fails. "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015). Prison authorities are permitted to test the sincerity of a religious belief that is being accommodated. *See Cutter v. Wilkinson*, 544 U.S. 709, 725, n. 13 (2005) ("prison officials may appropriately question whether a prisoner's religiosity . . . is authentic."). Summary judgment is also appropriate as to this claim.

With regard to the two instances where Alaameri claims he did not receive his kosher meals after he had been approved for participation in the RDP, he adduces no evidence of the officers' intentional conduct. This Court has no information relating to the unnamed officer's failure to provide Alaameri with a kosher meal on July 27, 2023. And with respect to the incident on August 17, 2023, by Alaameri's own statement, the kosher meal tray was gone from the officer's desk when he was returning from the shower and he was told that it had been stolen. While failure to accommodate religious dietary needs amounts to a substantial burden on the free practice of religion when that failure is intentional, negligent interference with religious exercise, such as that alleged here, is not remediable under the First Amendment. *Lovelace v. Lee*, 472 F.3d 174, 194, 201 (4th Cir. 2006); *Meyer v. Teslki*, 411 F. Supp. 2d 983, 991 (W.D. Wis. 2006) (holding a prison official violates an inmate's rights under RLUIPA if he **intentionally** and without sufficient justification denies an inmate his religiously mandated diet.) (emphasis added). Summary judgment is therefore appropriate as to those claims as well, because Alaameri has not created a genuine issue of material fact as to intentional conduct by the involved officers.

### C. Eighth Amendment claim

Prison officials have a duty to "provide humane conditions of confinement ... [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1995)). This is because the Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"[T]to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal alterations omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

13

To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known, excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson v. Virginia*, 878 F.3d 89, 107 (4th Cir. 2017). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To survive summary judgment, the plaintiff must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837-38) (internal quotations omitted).

"While prisoners have the right to nutritionally adequate food under the Eighth Amendment, they must prove deliberate indifference, meaning that a prison official must have known of and disregarded an objectively serious condition." *Miles v. Guice*, 688 Fed. Appx 177, 179 (4th Cir. 2017) (citing *Farmer*, 511 U.S. at 832). Here, Alaameri's complaint stops short of stating that he was denied all food on the days in question and the record evidence supports a finding that Alaameri had access to food purchased through the commissary. *See White v. Gregory*, 1 F.3d 267, 269 (4th Cir. 1993) (allegation that inmate received only two meals a day on weekends and holidays but three meals a day on weekdays was insufficient to state an Eighth Amendment claim absent suggestion of deleterious physical or mental effects). Alaameri's claims that he was starved because he did not receive two isolated kosher meals during the month after he had signed up for the RDP simply do not rise to an objectively serious risk of harm. The "denials" occurring before Alaameri signed up for the RDP are attributable to Alaameri's own refusal to eat the

14

standard meals that were offered and his failure to avail himself of the program sooner. As such, summary judgment must be granted in favor of Defendants on this claim.

## III.  CONCLUSION

By separate order which follows, Defendants' Motion to Dismiss or for Summary Judgment, construed as a motion for summary judgment, shall be granted.

October 3, 2024
Date

/s/
Stephanie A. Gallagher
United States District Judge